DEHRING *v.* BECK.

1. FIXTURES — BREWERIES — STORAGE TANKS — LANDLORD AND TENANT.

Where the tenant of a brewery on surrendering his term left in place storage tanks, fermenting tubs, chip casks and the like, used by him in operating the brewery, it is proper to assume, on the issue of ownership between the landlord and his mortgagee, that they were the property of the landlord.

2. SAME—MORTGAGOR AND MORTGAGEE—INTENT OF PARTIES.

Whether articles used in the operation of a brewery are covered by a mortgage of the brewery, depends not upon the way in which they are attached to the realty, but upon the intent of the parties.

3. SAME.

A mortgage of a brewery covers storage tanks, fermenting tubs, chip casks, a large kettle, pipes for the purpose of cooling beer and for passing beer from the kettle to the tanks, all belonging to the mortgagor and all adapted for and used in the manufacture of beer in the brewery, and not removable therefrom without being taken to pieces, though not attached to the realty otherwise than by their great weight.

Appeal from Alpena; Emerick, J. Submitted October 18, 1906. (Docket No. 47.) Decided December 21, 1906.

Bill by Anna Dehring against John Beck to restrain the removal of certain brewery fixtures. From a decree for complainant, defendant appeals. Affirmed.

*I. S. Canfield,* for complainant.

*Joseph H. Cobb* (*C. R. Henry,* of counsel ), for defendant.

CARPENTER, C. J. The controversy in this case relates to the ownership of certain storage tanks, fermenting tubs, chip casks, a large kettle, pipes for the purpose of

cooling beer, also pipes for the purpose of passing beer from the kettle to the various casks and from the casks to the storage tanks; all of which are situated in a certain brewery formerly owned by Teresa Leins in the city of Alpena, or in the cellars underneath said brewery, and all of which are essential to the operation of said brewery. Complainant is the owner of said brewery, having purchased the same at the foreclosure sale of two certain mortgages given to her by said Teresa Leins, and it is her claim that the property in controversy constituted a part of the mortgaged premises, and was, therefore, embraced in the mortgages, and transferred at the foreclosure sale. Defendant's claim is based on a title acquired from certain tenants of said Teresa, whose lease was made subsequent to the mortgages of complainant.

On the trial in the circuit, testimony was taken in open court; the learned judge in a very carefully prepared opinion decided that the articles in controversy belonged to complainant and granted a decree enjoining defendant from removing them from the brewery. The opinion of the trial judge, proceeded upon the assumption that these articles were in place on the premises and belonged to Teresa Leins at the time she executed the mortgages to complainant. In the course of that opinion the trial judge said that all the articles in controversy were placed on the premises by Augustine Leins (the husband of said Teresa) during his lifetime. It is pointed out in defendant's brief that this statement is erroneous; that certain of the tanks were placed on the premises by a Mr. Roach, a tenant of Teresa Leins, after the death of Augustine. This error does not affect the reasoning of the circuit judge, for, at the time the last mortgage was given to complainant, Roach had surrendered his tenancy, leaving these articles in place, and therefore the trial judge had a right to assume that these articles did belong to said Teresa at the time complainant's rights accrued. It is of no consequence that the tanks had been put in place by a tenant, since, at the time the last mortgage was

given, they constituted a part of the mortgaged premises, and belonged to the mortgagor. Nor is it of consequence that, at the time the first mortgage was given, the tanks belonged to the tenant and not to his landlord, the mortgagor. If this circumstance exempted the tanks from the operation of the first mortgage, they would none the less be subject to the operation of the second, and, as complainant acquired title by foreclosing the second mortgage, it is immaterial what property was covered by the first. This preliminary discussion brings us to the meritorious claim presented by defendant, viz., that the storage tanks, fermenting tubs, and chip casks were not covered by complainant's mortgages. To show the character of these tanks, tubs, and casks, their location and their relation to the brewery, we quote from the opinion of the trial judge:

"In the subcellar, upon one side, standing upon a heavy framework of timbers, are four tanks, known as 'storage tanks.' These tanks have a capacity of about 50 barrels each, and are used for the storage of the manufactured product. They are constructed of white pine staves, held in place by iron hoops. From the fact of their great size, they were built in the subcellar itself. They cannot be removed from the cellar without being taken in pieces, but they are only affixed to the realty and held in place by their great weight. Upon the other side of this subcellar, and resting upon a similar foundation or framed timbers are seven 'chip tanks,' having a capacity each of 20 barrels and upwards. These tanks are also constructed of heavy staves, with iron hoops, and are used during the process of curing the beer, before the same passes by the means of pipes, into the storage tanks. These chip tanks or casks could not be taken out of such cellar without being completely taken to pieces. Neither are they affixed to the realty, except as they are held in place by their own great weight.

"In the cellar above the subcellar are a large number of casks, known as 'fermenting tanks' more often called 'fermenting tubs.' These tanks or tubs run from a capacity of 20 barrels upwards, and cannot be removed from the cellar in question without being taken in pieces. All of these tanks, in both cellars, are connected with the

brewing kettle in the brewery proper, by iron pipes of a
considerable diameter, the pipes being hung upon iron
brackets, securely affixed to the walls of the brewery and
cellar by means of iron brackets and hangers.   *   *   *
"They are all adapted for, and were all used, prior to
the time of the making of the mortgages, in the manufac-
ture of beer at the premises in question."

It is the claim of defendant that the articles in dispute
were not covered by the mortgage because they were not
annexed to the realty, and were "capable of removal by
simply knocking off the hoops, and could be reassembled or
set up for use in any other place, and would have been
equally adapted to use in any other brewery, or other
industry where liquids are stored or used in large quan-
tities in open vessels." Whether or not these articles were
covered by the mortgage is to be determined, not by the
way they were attached to the realty, but by the intent of
the parties. *Smith* v. *Blake,* 96 Mich. 542; *Byrne* v.
*Werner*, 138 Mich. 328 (69 L. R. A. 900). In *Smith* v.
*Blake*, we held that heavy machinery, which, like that
in the case at bar, was not fastened to the soil or building,
was included in a mortgage upon the realty. That case
rules this, unless it should be distinguished—as defendant
contends — because there it was said: "Furthermore,
the preponderance of the proof shows that the parties
understood that this property was to be covered by the
mortgage," while here there is no competent testimony
tending to prove that, at or before the time the mortgage
was given, the parties thereto agreed that it should cover
the articles in controversy. Such testimony, if admissible
(and its admissibility has been denied, *Wadleigh* v. *Jan-
vrin*, 41 N. H. 503), is unnecessary in this case. The
intent that the mortgage should cover these articles is to
be inferred from its proper construction — that is, by
applying its language to its subject-matter — for it
is impossible to believe that the mortgagor and mort-
gagee intended to exclude from its operation articles
without which the brewery property described in the

mortgage could not be operated and which could not be removed except by being taken to pieces. The case is therefore indistinguishable from *Smith* v. *Blake*, supra.

The decree is affirmed.

McALVAY, GRANT, BLAIR, and MOORE, JJ., concurred.